JOYCE and another, Respondents, v. CONWAY and wife, Appellants.

*April 8—May 5, 1959.*

For the appellants there were briefs by *Geffs, Geffs, Block & Geffs* of Janesville, and oral argument by *Jacob Geffs*.

For the respondents there was a brief by *McWilliams & Steil* of Janesville, and oral argument by *George K. Steil*.

MARTIN, C. J.   In 1933 General Motors Corporation acquired 180 lots from Modern Housing Corporation and other grantors, which lots were located in Overlook Heights Addition No. 2 to the city of Janesville, Wisconsin. Thereafter, in the conveyances of all such lots by General Motors Corporation the deeds contained the following restrictive covenant:

"The premises described in the foregoing instrument shall be used for residence purposes only; no building shall be erected or maintained thereon except a single, private dwelling house and outbuildings (including private garage); no business or trade of any kind shall be conducted thereon other than the maintenance of an office by doctors or dentists."

The deeds to some lots in the subdivision do not contain this restriction, but they were executed before the property was acquired by General Motors Corporation.

By three deeds in 1953 General Motors Corporation conveyed to Otto A. Ambrose and Othella B. Ambrose, his wife, lots 3, 4, 5, and 6 in block 14 of said subdivision, and each of the deeds contained the restriction set out above.

On October 30, 1953, Mr. and Mrs. Ambrose conveyed to the defendants Conway the southeasterly 46 feet of lot 5 and the northwesterly 14 feet of lot 6. On May 29, 1954, they conveyed to the plaintiffs Joyce lot 4 and the northwesterly four feet of lot 5.

Plaintiffs' and defendants' properties are adjoining. Prior to 1958 their houses were used as single-family dwellings. In 1958 defendants erected an outside stairway toward the rear of their house on the side facing plaintiffs' house. They also changed the upstairs interior into a family unit by adding a kitchen. The affidavit of the plaintiffs states that the building permit obtained from the city of Janesville by the defendants states that it is to convert their residence into a two-apartment building.

Defendants contend that the only *use* restriction contained in the covenant is that of "residence purposes" and that the language "no building shall be erected or maintained thereon except a single, private dwelling house" refers only to the type of building, which in this instance is that of a "dwelling house." Thus, they argue, there has been no violation of the restrictions, either as to use or architecture.

The two clauses must be read together. Both "residence purposes" and "dwelling house" relate to use of the premises. The first clause is general, the second specific. Regarding the second, the decisions are conflicting as to whether such language forbids the erection or maintenance of a duplex or double house. The difference turns upon whether the restriction is considered to be against the plurality of houses only, or against plurality of use or occupancy as well. But where the word "private" has been added to "dwelling" or "single" dwelling, the majority of the courts have held

that such a restriction prohibits the use of the property for dwelling purposes of more than a single family. Covenants—Multiple Residence, Anno. 14 A. L. R. (2d) 1388 *et seq.* This court has adopted the majority view in *Ward v. Prospect Manor Corp.* (1926), 188 Wis. 534, 206 N. W. 856, holding that the words "private residence or dwelling house" mean a dwelling house for a single family. The language used in the covenant in the instant case, "single, private dwelling house," is even more clearly indicative of an intent to limit use of the property to a house for single-family occupancy.

There is some argument by defendants that the practical interpretation of the restrictive covenant by the community permits conversion of their home into a two-family dwelling. We cannot agree. All 180 lots sold by the General Motors Corporation contained the identical restriction. It appears from the affidavits that the only persons who have violated the restrictions have been one Lester Robinson and the defendants. Robinson purchased two lots in the subdivision from General Motors Corporation in 1951. His deed contained the restriction in question. His lots are located at a corner diagonally through the block from where the plaintiffs' property is situated. In 1951 he moved a three-apartment house building onto his property, and his affidavit states there has never been any objection to the establishment and maintenance of his three-family house. It also appears that other variations exist on some of the lots conveyed by General Motors Corporation, but these were made as the result of zoning changes by the city of Janesville. A few two-family dwellings in the subdivision are maintained on property conveyed by grantors other than the General Motors Corporation. With only these few exceptions, all the homes are one-family dwelling houses. We see no evidence of a practical interpretation of the restriction by the

community which would permit the erection or maintenance of two-family dwellings.

Nor can it be said that plaintiffs have waived the restriction by failing to object to other violations. Their acquiescence in the violation by Robinson does not deprive them of the right to enforce the restriction in this case. There is nothing in the record to show that plaintiffs consciously consented to waive their rights under the covenant in any instance. There is nothing to show that the Robinson violation in any way affected the plaintiffs. In the *Ward Case, supra,* page 540, this court held:

"It is now generally recognized by the overwhelming weight of authority in this country that an individual lot owner is not under penalty of waiving his right to the enforcement of a restrictive covenant by his failure to take notice of such violations as do not affect him. . . .

" 'In order to have the benefit of restrictive covenants, it is not necessary that the plaintiff should take notice of every violation thereof. He may take no notice of violations not especially offensive to him without losing his right to enforce the restrictions in the case of especially offensive violations.' "

*By the Court.*—Order affirmed.