**LAKE SAINT LOUIS COMMUNITY AS-SOCIATION, Plaintiff-Appellant,**

v.

**Harry KAMPER et al., Defendants-Respondents.**

No. 35144.

Missouri Court of Appeals,
St. Louis District,
Division One.

Dec. 11, 1973.

Blumenfeld, Kalishman, Marx & Tureen, Paul R. Ferber, Clayton, for plaintiff-appellant.

Ervin D. Davis, St. Charles, for defendants-respondents.

WEIER, Judge.

Plaintiff sought and obtained a temporary injunction which prevented the maintenance of a builder's sign in front of the house of defendants Kamper during its construction. After a hearing on the permanent injunction, the court dissolved the temporary injunction and denied the petition for a permanent injunction, finding in its decree that a restrictive covenant, preventing the erection of signs in the subdivision where the Kampers were building, had been waived by the plaintiff, the developer, and the lot owners. The plaintiff now appeals, contending both that the finding of the court as to waiver is contrary to the express provisions of the recorded restrictions applicable to the subdivision and that the evidence failed to support the judgment and finding of the court that there had been a waiver of the sign restriction.

Plaintiff Lake Saint Louis Community Association is a not-for-profit corporation which administers and enforces the Lake Saint Louis Declaration of Covenants and Restrictions for subdivisions in Lake Saint Louis, located in St. Charles County, Missouri. Defendants Harry and Evelyn Kamper purchased Lot 9 of South Point Subdivision in Lake Saint Louis, and engaged defendant J. M. Construction Company to construct a home on this lot. During construction of the home, defendant J. M. Construction Company erected a sign on Lot 9 advertising itself as the builder. Article X, Section 1(n) of the Declaration of Covenants and Restrictions for Lake Saint Louis prohibited the erection and maintenance of any sign on any lot except one not to exceed five square feet in size for the purpose of advertising the property for sale or lease.

R. T. Crow was the principal stockholder of Lake Saint Louis Estates Company, which was the developer of Lake Saint Louis. He also owned and controlled a construction company which built houses in Lake Saint Louis. A majority of the members of the Board of Directors of the plaintiff corporation were Mr. Crow, his family, his attorney, and people in his employ. One householder in Lake Saint Louis Subdivision was also a member of the Board. An architectural control committee, in part appointed by the Board of Directors of the plaintiff association and in part elected by the people owning property in the subdivision, reviewed all plans of houses built in Lake Saint Louis and established criteria with respect to their construction. In a certain guideline for builders promulgated by this committee it was provided: "Builders' signs shall be removed immediately upon occupancy of the house." Mr. Alan J. Klein, Community Manager of Lake Saint Louis, and a member of the Board of Directors of the plain-

tiff association, was employed in July of 1970. As Community Manager, he had as a part of his duties the enforcement of the restrictive covenants in the subdivision. Prior to May or June of 1972, he testified it was customary that builders' signs would be erected when construction on a house was commenced. Some sixteen builders, including the building company of the developer, operated in the Lake Saint Louis area. These construction companies employed the signs so that there might be some identification of the projects upon which they were working, particularly for the convenience of subcontractors and materialmen. Klein testified that he thought it was in the best interest of the community, when he was first employed, to permit the signs, and advised the Board to allow them even though he was aware of the restrictive covenant. According to Mr. Klein it was "common practice" for builders to erect such signs. Jerome Mueller, a part owner of J. M. Construction Company, testified that when he worked for Crow Construction Company, the company operated by the developer, he was personally directed by Mr. Crow to erect builders' signs. Seventeen signs were erected by Mueller in a six-month period during this employment. After he became engaged in his own construction company, the defendant J. M. Construction Company, he built fifteen homes in Lake Saint Louis, and signs were erected for all fifteen.

In May or June of 1972, Klein, the Community Manager, testified that an attempt by oral request was made to enforce the restrictive covenant against signs. In July of that year, letters were written to contractors concerning violations. Following the failure of J. M. Construction Company to remove its sign on the Kamper lot, this action was commenced.

■ The central issue in this case is whether the community association has relinquished and abandoned the restrictive covenant against builders' signs and, therefore, has waived its enforcement. There are no hard and fast rules as to what constitutes waiver. Each case must be decided on its own facts. Gibbs v. Cass, 431 S.W. 2d 662, 668[1] (Mo.App.1968); Minton v. Lichtenstein, 487 S.W.2d 43, 46[4] (Mo. App.1972). Even though the law favors the free and untrammeled use of real property, restrictions thereon cannot be and are not to be disregarded. Minton v. Lichtenstein, *supra*, at 1.c. 46[2]. Restrictions adopted for the purposes of preserving the beauty and utility of a pleasant residential environment and enhancing the value of the property are reasonable and valid, and injunction is the proper remedy for their violation. Greenberg v. Koslow, 475 S.W. 2d 434, 436[1] (Mo.App.1971). On the other hand, a right to enforce building restrictions may be waived by conscious acquiescence in persistent, obvious and widespread violations. Greenberg v. Koslow, *supra*, at 1.c. 438[8]; Scharer v. Pantler, 127 Mo.App. 433, 105 S.W. 668, 669[2] (1907).

■ Violations here were not only permitted but encouraged as a means of lot identification. Despite knowledge of the restrictive covenant, the community manager permitted the signs, and in some cases furnished the signs because he felt they served a legitimate community purpose. The architectural control committee of the community association encouraged such signs by suggesting a proper type of sign to be used. Such signs were recognized in the guidelines promulgated by this committee. Use of signs in violation of the restriction persisted for a period of almost two years without any protest. Under these circumstances waiver has been effected as to builders' signs.

■ Our reading of the transcript failed to disclose the size of the builders' signs that were erected in the subdivision during construction of the houses by the builders. The purported purpose of the signs was to identify the construction sites, especially for subcontractors and suppliers of material. The purpose of the restriction was to

prevent unsightly signs from being erected in the subdivision. In the absence of any evidence in this area, we have concluded that the size of the signs which may be used by builders for identification of job sites should conform to the size set forth in Section 1(n), Article X of the Declaration of Covenants and Restrictions for advertising boards; that is, that they should be not more than five square feet in size. The finding of the trial court is therefore ordered to be modified to indicate that waiver of this restriction pertains to construction. signs used during the period of construction, not to exceed five square feet in size. Except for said modification, the judgment is in all respects affirmed.

SIMEONE, Acting P. J., and KELLY, J., concur.