**M.W. DIERBERG, Trustee, etc., Respondent,**

v.

**Joseph B. WILLS and Dorothy P. Wills, et al., Appellants.**

No. 49129.

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 17, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 1985.

David L. Rapp, Clayton, James E. McDaniel, St. Louis, Bertram W. Tremayne, Clayton, for appellants.

Donald J. Gunn, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

This appeal follows from an order of the Circuit Court of St. Louis County declaring a restrictive covenant null and void. The covenant, which prohibited the construction of "any building intended for any purpose except a one family private residence," had been properly recorded in the original deed to five tracts of land. The plaintiff, who owned one of these five tracts, brought this declaratory judgment action, naming the owners of the other four tracts as defendants. Plaintiff seeks to have the covenant declared null and void so that she can carry forward her plan to construct a surface parking lot on her property.

On appeal, defendants argue that the trial court erred in concluding: (1) that defendants had waived and abandoned their right to enforce the covenant; (2) that changes in the conditions in and around the restricted area had rendered the covenant unenforceable; and (3) that plaintiff's proposed construction of a parking lot did not violate the terms of the covenant. We hold that the covenant remains legally enforceable, but that a parking lot would not violate such covenant. We thus reverse on the first two issues, but affirm on the latter.

On September 10, 1953, Robert and Hulda Courtney (hereinafter the Courtneys) conveyed all of their right, title and interest in an undivided 16.23-acre tract of land in St. Louis County to Eugene and Hildegarde Wenger (hereinafter the Wengers). The deed conveying title to the Wengers contained the restrictive covenant at issue in this case:

> "Parties of the second party, their heirs or assigns, agree not to erect on above described real estate any building intended for any purpose except a one family private residence containing a minimum of 2,000 square feet exclusive of garage. This provision shall not apply to any outbuildings for domestic purposes to be used in connection with said residence."

The Wengers subsequently sold this tract in five separate parcels, which are labeled Tract A through Tract E on the diagram included herein.

DIAGRAM

Current Ownership

Tract A: Defendants Rosebroughs

Tract B: Defendants Wills

Tract C: Plaintiff

Tract D: Defendant State Highway Commission

Tract E: Defendant Centerre Bank

Tract B was sold first, the Wengers conveying title to defendants Joseph and Dorothy Wills (hereinafter the Wills) in 1963. The Wengers next sold Tracts A and C on October 6, 1965. Defendants John and Jean Rosebrough (hereinafter the Rosebroughs) purchased Tract A at that time. Plaintiff acquired title to Tract C in December of 1979.

On May 3, 1967, Eugene Wenger (his wife having died) conveyed Tract D to the defendant State Highway Commission of Missouri (hereinafter the Commission). On February 13, 1968, Wenger conveyed the remaining land, Tract E, to the Mertz Development Company (hereinafter Mertz). In 1970 Mertz conveyed Tract E to Chesterfield Bank, which later merged with defendant Centerre Bank (hereinafter Centerre Bank).

▇ Current ownership of the five tracts is listed beside the diagram (see above).[1] Of the named defendants, only the Wills and Rosebroughs entered an appearance in the court below. Default judgment was therefore entered against Centerre Bank and the Commission. This appeal has been taken on behalf of the Wills and Rosebroughs (hereinafter appellants).

According to evidence adduced at trial, Tracts A, B, and C have been used exclusively for residential purposes since 1953. Each of the tracts is heavily wooded, and ingress and egress to them may be obtained only by means of a private, dead-end road. Defendants Wills and Rosebroughs

---

1. Not all of the deeds in the chain of title leading to the present owners made reference to the subject covenant. None of the parties disputes, however, that if the covenant has not been waived, released or otherwise rendered legally unenforceable it remains applicable to these five tracts. The subject covenant is a "real" covenant, or one that "touches or concerns" the land, as opposed to a "personal" covenant, which is merely a promise made by a grantor to a grantee generally concerning use of the land. A real covenant "runs with the land" and is binding on all successors in interest, regardless of whether they had any actual or constructive notice of such covenant when they acquired title. *See Lake Wauwanoka, Inc. v. Spain*, 622 S.W.2d 309, 312 n. 6 (Mo.App.1981).

each own and maintain private residences on their property. Each residence is valued at between $300,000 and $500,000.

The defendant Commission obtained Tract D in 1967 pursuant to its plan to relocate Clarkson Road. As indicated on the diagram, Clarkson Road, a four-lane highway, now runs across Tract D and intersects with Highway 40 immediately to the north of Tracts A, B, and C.

The deed conveying title to Tract E from Wenger to Mertz in 1968 expressly released Tract E from the subject covenant. Between 1967 and 1969 the owners of Tracts A, B, and C (the defendants Rosebroughs and the predecessors in interest to the defendants Wills and the plaintiff) likewise released Tract E from the covenant by quit-claim deed.[2] Defendant Centerre Bank currently owns and maintains a bank building on Tract E.

The trial court found that in 1953, when the subject covenant was created, the restricted area was part of a rural, agricultural community. No commercial or retail businesses existed in the surrounding area, and only a small part of the area was residential. The relocation of Clarkson Road in the late 1960s, however, initiated a period of rapid and expansive commercial development. The surrounding area currently includes the Chesterfield Mall, several large office buildings and a condominium development.[3]

The trial court's findings indicated that the increase in the volume of traffic and commercial activity around the restricted area has caused a significant rise in noise levels within the restricted area. Moreover, St. Louis County has finalized plans to build a circumferential highway around the Clarkson Road-Highway 40 interchange

that will serve to move highway traffic even closer to appellants' homes. Defendant Joseph Wills testified that this commercial development has intruded upon his privacy. A parking lot for an office complex abuts his property, and the large number of people using the lot has impaired his use and enjoyment of his backyard. Expert testimony regarding the highest and best use of the restricted area was conflicting, with plaintiff's expert favoring an office park or high-density, multiple-family housing, and defendants' expert favoring single-family residential use.

Before commencing discussion of the specific issues raised on appeal, we note that our review of the trial court's decision is circumscribed by Rule 73.01. A decree or judgment of the trial court will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

In their first allegation of error, appellants argue that the trial court erred in concluding that appellants (including their predecessors in interest) had waived and abandoned their right to enforce the subject covenant. The trial court based its finding of waiver and abandonment on two grounds: (1) the release of Tract E from the covenant by the grantor (Eugene Wenger) and by the owners of Tracts A, B, and C; and (2) the failure of appellants to object to the construction of Clarkson Road across Tract D.

 No hard and fast rules dictate what acts or omissions may constitute waiver or abandonment of a restrictive cov-

---

2. As one of its findings of fact, the trial court found that the Courtneys, the original grantors of the restricted area, released Tracts A, B, C and E from the covenant by quit-claim deed on August 18, 1967. This finding directly conflicts with the court's earlier finding that the Courtneys had conveyed all of their right, title and interest in the restricted area to the Wengers on September 10, 1953. Unable to reconcile these findings, we disregard the finding pertaining to the release by quit-claim deed.

3. Some single-family residences still remain in the surrounding area. For example, Joseph Bettendorf, who intervened in this action as a defendant, owns and maintains a residence on property immediately adjacent to Tracts A and C. His property is not restricted by the covenant at issue, but the trial court allowed him to intervene. He joins defendants Wills and Rosebroughs in this appeal.

enant. Each case must be decided upon its particular facts, but certain well established principles are generally applicable. *Gibbs v. Cass,* 431 S.W.2d 662, 668 (Mo. App.1968). The law favors the free and untrammeled use of real property, but valid restrictions thereon cannot be and are not disregarded by the courts. *Lake Saint Louis Community Association v. Kamper,* 503 S.W.2d 447, 449 (Mo.App.1973). The right to enforce a valid restrictive covenant may, however, be waived by conscious acquiescence in persistent, obvious and widespread violations thereof. *Id.* If restrictions apply to an entire area and redound to the benefit of all property owners in the restricted area, then waiver or abandonment occurs only when violations of the restrictions are so general as to indicate an intention or purpose to abandon the plan or scheme intended to be maintained by the restrictions. *Eichelsbach v. Harding,* 309 S.W.2d 681, 686 (Mo.App. 1958).

■ We hold that the covenant in the instant case has neither been waived nor abandoned. The conveyance of Tract D to the defendant Commission, although in form a negotiated sale, nevertheless resulted from the state's exercise of its power of eminent domain. In *London v. Handicapped Facilities Board of St. Charles County,* 637 S.W.2d 212, 215 (Mo.App. 1982), this court held that property rights created by means of deed restrictions "are subordinate to the right of eminent domain and can be extinguished by condemnation proceedings." The appellants' right to enforce the covenant as to Tract D was in this case overridden by the Commission's authority. The conveyance of Tract D and the appellants' acquiescence in the. con-

struction of Clarkson Road did not, therefore, constitute a voluntary or intentional waiver of their right to enforce the covenant.[4]

The release of Tract E from the covenant is also insufficient to support a finding of waiver or abandonment. The Commission's taking of Tract D severed Tract E, a small, narrow strip of land, from Tracts A, B, and C (see diagram). This severance made enforcement of the covenant against Tract E impractical and irrelevant to the purposes for which the owners of Tracts A, B, and C desired to maintain the covenant. The release of Tract E was thus merely a practical and reasonable response to changed conditions, and not a ·conscious waiver or abandonment of the covenant.

■ The trial court held that releasing one tract from the covenant necessarily served to release all tracts. In *Massie v. Benton,* 678 S.W.2d 445 (Mo.App.1984), this court held to .the contrary. In that case lot owners had released only one of four lots from a restrictive covenant. We held that "the single lot waiver was not a voluntary relinquishment of the ... restriction for the [remaining] lots...." *Id.* at 447. In the instant case, then, the release of Tract E did not serve to waive or abandon the covenant as it applied to the remaining lots.[5]

Having concluded that neither the construction of a highway across Tract D nor the release of Tract E supports a finding of waiver or abandonment, we hold that the trial court's judgment on this issue was based upon an erroneous application of the law and was not supported by substantial evidence. *Murphy v. Carron, supra.* We thus reverse on this issue.

---

**4.** Given our interpretation of the terms of the covenant, *infra,* it is also probable that the construction of Clarkson Road did not in fact violate the covenant.

**5.** Respondent argues that a judicial decree enforcing the covenant against Tract E would, in light of the foregoing evidence, violate her right to equal protection of the laws under the fourteenth amendment to the United States Constitution and article I, section 2 of the Missouri Constitution of 1945. Although respondent cites no authority in ·support of this argument, the

only conceivable basis for such a claim is the rule established in *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). In that case the Court held that judicial enfor·:ement of a racially discriminatory restrictive covenant violated the right of equal protection. *See also Woytus v. Winkler,* 357 Mo. 1082, 212 S.W.2d 411 (1948). The covenant at issue in the case before us does not discriminate on the basis of race or any other "suspect" classification. Accordingly, we reject respondent's argument on this issue.

In their next allegation of error, appellants argue the trial court erred in concluding that changes in and around the restricted area had rendered the restrictive covenant unenforceable. The trial court based its "change of conditions" finding on two grounds: (1) the construction of a highway and a bank within the restricted area; and (2) the increase in traffic and noise levels and the loss of privacy occasioned by the commercial development of the surrounding area.

As with the issue of waiver and abandonment, no hard and fast rules dictate what constitutes sufficient change of conditions to render a restrictive covenant unenforceable. *Proetz v. Central District of Christian & Missionary Alliance,* 191 S.W.2d 273, 277 (Mo.App.1945). The general rule, however, provides that the change must be so radical as to defeat the essential purpose of the covenant or render the covenant valueless to the parties. *Eilers v. Alewel,* 393 S.W.2d 584, 590 (Mo.1965); *Gibbs v. Cass, supra* at 669. If the covenant remains of substantial value, the court will enforce the covenant even though changed conditions have caused a hardship to the party seeking relief from the covenant. *Lake Wauwanoka, Inc. v. Spain, supra* at 312. The court is more likely to deny enforcement on the ground of changed conditions if such changes have occurred within the restricted area itself and have been wrought by the party seeking judicial enforcement. *Pickel v. McCawley,* 329 Mo. 166, 44 S.W.2d 857, 861 (1931).

Since 1953, when the subject restrictive covenant was created, Tracts A, B, and C have remained virtually unchanged. The only significant changes within the area originally restricted by the covenant have been on Tract D, where Clarkson Road is now located, and Tract E, where Centerre Bank is now located. We find these changes insufficient to render the covenant unenforceable. Respondent suggests, and the trial court apparently assumed, that any change of conditions contrary to the terms of the covenant which occurs within the restricted area renders the covenant unenforceable as a matter of law. We disagree. In *Pallme v. Rott,* 440 S.W.2d 184, 188 (Mo.App.1969), this court considered whether the State Highway Commission's taking of part of a subdivision for highway purposes effected "such a radical and fundamental change in the character of the subdivision as to defeat the purpose of the restriction relegating the use of the lots to residential purposes only...." We held that in the absence of evidence showing a change in the remainder of the subdivision, we could not hold as a matter of law that the Commission's taking represented a "change of conditions" sufficient to render the covenant unenforceable.

Similarly, in the instant case the trial court cites no evidence indicating that the use of Tract D for highway purposes has significantly altered the residential character of Tracts A, B, and C, or that the essential purpose of the covenant has been defeated. Appellants have continued to use and enjoy their property for residential purposes, uninterrupted by the relocation of Clarkson Road. The evidence indicated that the trees covering appellants' property, while not completely sealing off noise and other instrusions, have provided a natural buffer allowing the residences to remain relatively secluded. The changed condition of Tract D has not, therefore, effected a change in the remainder of the restricted area sufficient to render the covenant unenforceable.

The erection of Centerre Bank on Tract E also did not alter the residential character of appellants' property or defeat the purpose of the covenant. Tract E lies on the opposite side of Clarkson Road from appellants' property, and its use for bank purposes has had no significant effect on Tracts A, B, and C.

Likewise, the commercial development of the property surrounding the restricted area does not constitute a "radical and fundamental change" sufficient to render the covenant unenforceable. The trial court's findings indicate that the surrounding area has been transformed from a rural and residential community to a commercial

maelstrom, and that the restricted area is now much more valuable for commercial than residential purposes. Missouri courts have consistently held such evidence insufficient to bar enforcement of a covenant intended to maintain the residential character of an area. *Jones v. Eilenstine,* 369 S.W.2d 278, 282 (Mo.App.1963). The party seeking relief must establish that such changes have destroyed any benefits sought to be obtained by the covenant. *Eilers v. Alewel, supra* at 590. The trial court's findings do not establish that changes in the surrounding area have significantly effected appellants' property, or that the purpose of the covenant has thereby been defeated.[6]

Having concluded that changed conditions in and around the restricted area have not been sufficient to render the covenant unenforceable, we hold that the trial court's judgment on this issue was based upon an erroneous application of the law and was not supported by substantial evidence. *Murphy v. Carron, supra.* We thus reverse on this issue.

In their final allegation of error, appellants argue the trial court erred in concluding that plaintiff's construction of a surface parking lot would not violate the restrictive covenant. Plaintiff intends to use the parking lot in conjunction with a bank to be built on unrestricted property immediately adjacent to plaintiff's property (Tract C). The trial court found that the covenant, by its terms, only restricted the construction of a "building," which it defined as "a physical structure with a roof and walls [that] is capable of being occupied as a dwelling place or used for the storage of property for safekeeping." The court held that a surface parking lot did not fall with-

in this definition and as such did not constitute a restricted use.

■ The law does not favor restrictive covenants, and thus they will be strictly construed in favor of free use of the land. *Calvin v. Sinn,* 652 S.W.2d 277, 278 (Mo.App.1983). "Restrictive covenants will not be extended by implication to include anything not clearly expressed in them." *Vinyard v. St. Louis County,* 399 S.W.2d 99, 105 (Mo.1966). If the meaning of a covenant is clear and unambiguous on its face, the covenant is not open to judicial construction. *Lake Wauwanoka, supra* at 313.

■ The restrictive covenant at issue in this case provides that the parties to the covenant "agree not to erect ... any building intended for any purpose except a one family private residence containing a minimum of 2,000 square feet exclusive of garage." On its face, this covenant restricts only the type of building that may be constructed within the restricted area and the use to which such building may be put; it does *not* restrict the use of the land if no building has been erected thereon.

In *Vinyard v. St. Louis County, supra,* the Missouri Supreme Court considered whether the use of part of a subdivision as a roadway violated a restrictive covenant substantially the same as the covenant before us.[7] The court construed the restrictive covenant as follows: "It is not the use of the *land* that is restricted. The restriction goes to the *type of structure to be erected* upon the land and the *use of the structure* erected thereon." *Id.* at 106. (Emphasis in original). Relying on the maxim forbidding extension of restrictive covenants by implication, the court held that a roadway is not a "building," and

---

**6.** The trial court based its finding of "changed conditions" in part on changes in zoning ordinances pertaining to the surrounding area. Since 1958, zoning has been changed from non-urban to commercial or high-density single- or multiple-family use. Such evidence is unpersuasive. As stated in *Eilers v. Alewel, supra* at 589:

[A] valid restriction upon the use of property is not terminated, superseded or nullified by the enactment of a zoning ordinance, nor is the validity of the restriction thereby affect-

ed.... [T]he rezoning of property for purposes other than residential does not supersede the original plat restrictions so as to prevent the enforcement of such restrictions.

**7.** The covenant at issue in *Vinyard* provided: "All lots shall be known and described as residential lots. No structure shall be erected on any residential building lot other than one detached single family dwelling which shall not exceed two stories in height ... No residence shall be used directly or indirectly for business of any character or for any purpose other than

therefore use of the land as a roadway did not violate the covenant. *See also Albrecht v. State Highway Commission*, 363 S.W.2d 643, 646 (Mo.1962).

Applying the reaso ing of *Vinyard* to the case before us, we construe the subject covenant strictly so as to restrict only the use of buildings on the land, and not the use of the land itself. We thus hold that plaintiff's construction of a surface parking lot does not violate the covenant.[8] Accordingly, we affirm the trial court's ruling on this issue.

The trial court's order declaring the restrictive covenant null and void is reversed. That part of the order declaring that a surface parking lot does not violate the covenant is affirmed.

SIMON, P.J., and DOWD, J., concur.

---

that of an exclusive private residence for one family." *Id.* at 105.

**8.** We note that several courts have considered whether a parking lot violates a covenant such as the one before us. Some of these courts have construed such covenants broadly to preclude use of the restricted property for any non-residential purpose, including a parking lot. Other courts have, however, adopted the rule that we follow here. *See* Annot., 80 A.L.R.2d 1258, 1262–63 (1961).