Bill VIRDON, et al., Plaintiffs-Respondents,

v.

Phil HORN and Tay Smith, Defendants-Appellants.

No. 14389.

Missouri Court of Appeals, Southern District, Division One.

May 30, 1986.

R. Jack Garrett, David H. Dunlap, West Plains, for plaintiffs-respondents.

Richard T. Martin, Gainesville, for defendants-appellants.

GREENE, Judge.

Defendants, Phil Horn and Tay Smith, appeal from that portion of a judgment of the circuit court which enjoined them from using Lot 1 of Dawt Mill Estates in Ozark County, Missouri for commercial purposes. They claim 1) the judgment is against the weight of the evidence, 2) that plaintiffs below are estopped from relying on a restrictive covenant which prohibited commercial usage of the lot in question, and 3) the decree prohibiting commercial use is indefinite and unclear.

Since this was a court-tried case, we are required to affirm the judgment if it is supported by substantial evidence, is not against the weight of the evidence, and is not based on any erroneous declaration or application of law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

In 1967, Bill Virdon, James Peters, Marvin Fowler, and Arthur Mallory purchased a number of lots located in a subdivision in Ozark County known as Dawt Mill Estates. Exercising our prerogative of taking judicial notice of geographical facts and current history, *Turpin v. Watts,* 607 S.W.2d 895, 900 (Mo.App.1980), we note that the property is located on the North Fork of White River in the vicinity of Dawt Mill, a secluded, attractive area, conducive to peace and relaxation. The subdivision was suitable for residential development, and plaintiffs intended to use it for such.

In 1970, plaintiffs in this case and Mallory, who later sold his interest in the lots to plaintiffs, traded Lot 1 to Wayne and Ruth Dinnell in exchange for other subdivision lots that the Dinnells owned. The deed contained a restrictive covenant which reads, "[s]aid property to be used for no commercial purposes and for residential purposes only." The Dinnells owned the mill, which was adjacent to Lot 1, and desired to occasionally use Lot 1 to provide overflow space for campers when the campground was full. A written agreement between the parties was executed that waived the commercial restriction on Lot 1, but limited the waiver to the Dinnells only. The specific language of the limitation was as follows:

> This waiver to apply only while Wayne and/or Ruth Dinnell shall own and actively operate the Dawt Mill properties. This waiver shall cease to apply when said Lot. # 1 is sold to a third party or when Wayne and/or Ruth Dinnell no longer own and actively operate the Dawt Mill properties.

The Dinnells then constructed 16 double camper sites providing electricity, water and sewage facilities on Lot 1. They understood that the limited commercial usage of the lot was permissive only, and not transferable. In 1973, the Dinnells sold the mill and Lot 1 to James and Delores Fisher, and told the Fishers at time of sale that they could not use Lot 1 for commercial purposes without obtaining permission from plaintiffs to do so. Plaintiffs gave oral permission to the Fishers to continue the same type of limited use of Lot 1 that the Dinnells had utilized, and also to Larry and Beth Walker, who bought the mill and Lot 1 from the Fishers in 1979.

In 1982, Horn and Smith (the contract shows Phillip L. Horne and Florence R. Smith as buyers; however, all pleadings, etc., are styled Phil Horn and Tay Smith)

entered into a contract for deed to purchase the mill and Lot 1, plus other lots in the subdivision, from the Walkers. As they wanted to expand the commercial usage of the mill area, they sought a "release or waiver" from the restrictive covenant so that they could expand the campground facilities on Lot 1. Plaintiffs would not agree, as they wanted to keep Lot 1 as a buffer zone between the extensive tourist activity at the mill and the rest of the residential lots in the subdivision.

In the face of plaintiffs' refusal, Horn and Smith took possession of the property they contracted for and intensified commercial activity in the mill area, including Lot 1. They initiated a canoe rental service, constructed a parking area and canoe access ramp, and expanded their concession and campground facilities. Approximately 70% of the campers stayed on Lot 1. Horn and Smith profited from this usage, as Horn testified that "the campers that come down, they buy our novelties and stuff and eat at our concession stand and rent our canoes." When Lot 1 would overflow, Horn and Smith permitted campers to use Lot 2, in which they had no interest. Plaintiffs requested that Horn and Smith stop using the lots for commercial purposes. When they refused, suit was filed. In Count I of plaintiffs' petition, they requested an order ejecting plaintiffs from Lot 2. Count II requested an injunction restraining defendants from using Lot 1 for commercial purposes.

At trial, Horn admitted that he and Smith had no legal interest in Lot 2, and were not entitled to use it for any purpose. In its judgment, the trial court ejected them from Lot 2, and enjoined them from using Lot 1 "in any commercial fashion."

In their first point on appeal, Horn and Smith urge that that part of the judgment enjoining them from using Lot 1 for commercial purposes was against the weight of the evidence.

■ The evidence in the case, which was largely undisputed, clearly demonstrates that Horn and Smith knew of the restrictive use of Lot 1 prior to purchasing it,

tried to get the restriction released or waived, and when they failed to do so, chose to ignore it and accelerate commercial usage of the lot. That part of the judgment enjoining Horn and Smith from using Lot 1 for commercial purposes is supported by the evidence and is not against the weight of the evidence.

Horn and Smith next contend that plaintiffs are estopped from enforcing the restrictive covenant against them because plaintiffs' prior conduct in allowing predecessors in title to use Lot 1 for limited commercial purposes caused Horn and Smith to reasonably rely on the fact plaintiffs had not enforced the covenant against prior Lot 1 owners.

There are no hard and fast rules as to what constitutes a waiver of a restrictive covenant, and each case must be decided on its particular facts. Even though the law favors free and untrammeled use of real property, restrictions as to its use are not to be disregarded. Restrictions which, as here, are adopted for the purpose of preserving beauty and enhancing the value of residential property are valid, and injunction is the proper remedy for their violation. *Lake St. Louis Community Ass'n v. Kamper*, 503 S.W.2d 447, 449 (Mo.App. 1973); *Greenberg v. Koslow*, 475 S.W.2d 434, 436 (Mo.App.1971).

■ Based on the evidence, we hold there was no waiver of the restrictive covenant. While plaintiffs did permit defendants' predecessors in title limited use of the lot for an overflow campground, such use was permissive only, and with a full understanding that if commercial activity on the lot endangered the peaceful enjoyment of the other lots, and diminished their value, that plaintiffs had a right to order that such commercial activity cease. The claim of waiver has no merit.

■ In their last two points relied on, Horn and Smith claim that terminology used in the decree enjoining them from using Lot 1 "in any commercial fashion" rather than saying "for any commercial purposes," the latter being the language of

the restrictive covenant, and limiting the use of the lot to "private residential purposes" instead of "residential purposes," in some manner made the decree confusing and unclear.

These minor semantic deviations from the precise language of the restriction do not change the clear intent of the judgment, which directed Horn and Smith, in no uncertain terms, that they may use Lot 1 only for residential purposes. The court's judgment is based on proper declarations and application of law.

Judgment affirmed.

TITUS, P.J., and FLANIGAN, J., concur.