Louis L. STOLBA and Geraldine E.
Stolba, et al., Respondents,

v.

Anthony J. VESCI and Linda
L. Vesci, Appellants.

No. 19860.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 22, 1995.

Motion for Rehearing and Transfer to
Supreme Court Denied Oct. 17, 1995.

Lynn D. Rodgers, Hall, Ansley, Rodgers & Condry, P.C., Springfield, for appellant.

William Icenogle, W. James Icenogle, Icenogle & Icenogle, Camdenton, for respondent.

PREWITT, Presiding Judge.

The principal question is whether a condominium can be built upon land which plat contains the following language:

> All lot owners are subject to the following conditions: only private homes of standard construction and a minimum foundation space of 600 square feet are to be built. The homes are to be finished outside so as not to detract from other homes. No business allowed.

The trial court found that "private homes" equates with "single family residence" and "the intent of the restriction to be to restrict construction to a single family residence." Defendants appeal from a permanent injunction issued against them prohibiting the construction of a condominium "or any other multifamily housing development within Websters Liahona Subdivision."[1]

---

1. The exhibits and pleadings reflect that three adjoining and unconnected buildings are proposed. Two would contain four living units and the remainder eight units. The parties in their pleadings and otherwise refer to those buildings in the singular as a "condominium". This opinion does likewise.

■ Certain general principles are applicable here. Review of this non-jury matter is under Rule 73.01(c). As that rule is interpreted, the trial court's judgment is to be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Gowen v. Cote,* 875 S.W.2d 637, 639 (Mo.App.1994). Judgments of the trial court are to be accorded considerable deference when the decision turns on factual determinations. *Marshall v. Pyramid Development Corp.,* 855 S.W.2d 403, 406 (Mo.App.1993). However, as to declarations and applications of law, the appellate court makes its own independent evaluation. *Id.*

■ The rules governing construction of restrictive covenants on realty are generally the same as those applicable to any covenant or contract. *Forst v. Bohlman,* 870 S.W.2d 442, 446 (Mo.App.1994); *Kauffman v. Roling,* 851 S.W.2d 789, 792 (Mo.App.1993). The party relying on the covenant bears the burden of proving the extent and application of its restriction. *Speedie Food Mart, Inc. v. Taylor,* 809 S.W.2d 126, 130 (Mo.App.1991).

■ Where possible, courts give effect to the intent of the parties as expressed in the language of the covenant. *Blackburn v. Richardson,* 849 S.W.2d 281, 286–287 (Mo. App.1993). In doing so, terms should be given their plain, ordinary and usual meaning. *Id.* at 287. However, where the meaning is in doubt, it is proper to consider the intentions of the parties. *Id.* In determining the intention, courts inquire into the purpose sought to accomplish and the accompanying circumstances at the time of the restrictive covenant. *Id.*

■ Ambiguity exists when wording is reasonably susceptible to different interpretations. *Speedie Food Mart,* 809 S.W.2d at 129. The test is whether the language in the context of the entire agreement is susceptible of more than one construction giving words their plain meaning as understood by a reasonable person. *Id.*

■ Restrictive covenants are to be strictly construed. *Paddock Forest Residents Ass'n. v. Ladue Service Corp.,* 613 S.W.2d 474, 477 (Mo.App.1981); *Phillips v. Schwartz,* 607 S.W.2d 203, 207 (Mo.App. 1980). If there is substantial doubt as to the meaning of the covenant, the doubt should be resolved in favor of the free or less restrictive use. *Blackburn,* 849 S.W.2d at 287. Even though the law favors untrammeled use of real estate, restrictions are not to be disregarded. *Virdon v. Horn,* 711 S.W.2d 205, 207 (Mo.App.1986).

■ Although, the general rule is that restrictive covenants are examined in the context of the entire instrument and not just a single clause, *Kauffman,* 851 S.W.2d at 792, here the language initially quoted is the only restriction on the land's use. The parties place no reliance on "standard construction" so the question is whether the entire condominium would be "only private homes".

The plat on which the restriction appears was acknowledged before a notary public on February 22, 1954. The plat was recorded in 1958. The "Condominium Property Act" was adopted in 1963 with the addition of Chapter 448 to the Revised Statutes of Missouri. *See* RSMo Supp.1963. Previously, there were no statutory provisions in Missouri relating to condominiums. On the background of such legislation, see John W. Walbran, *Condominium: Its Economic Functions,* 30 Mo.L.R. 531–536 (1965).[2]

■ Section 448.1–103(7) RSMo 1994, a portion of the Uniform Condominium Act adopted in 1983, provides:

(7) **"Condominium"** means real estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions. Real estate is not a condominium unless the

---

**2.** Although often considered more recent, condominium structures date back over 4,000 years. In this century, Brazil enacted "horizontal property" laws in 1928, and Chile in 1937. In the United States, there were a few condominiums in 1947, but no statutes governing them. Between 1962 and 1968, the concept spread rapidly throughout this country. *See* BRUCE CASSADY, THE COMPLETE CONDOMINIUM GUIDE, 16–19 (1979).

undivided interests in the common elements are vested in the unit owners;

This definition is consistent with the definition of "condominium" in judicial decisions. *See* BLACK'S LAW DICTIONARY 295 (6th ed. 1990). Thus, both separate and common ownership would exist if the condominium is constructed. "Separate" may equate with "private", and the individual units would seem to be "private homes". Much of the buildings and land, however, would be common areas not usually referred to as "private" except in the sense of not being "public".

■ Condominiums were not common, if they existed at all, in Missouri when the covenant here was made and recorded. Defendant Anthony J. Vesci said that in 1954, they were "a rarity" at the Lake of the Ozarks. The trial court may have determined that they did not exist in the Lake area, and that in 1954, the owners never contemplated they would be proposed on the subdivision. That may explain why there was no specific reference to condominiums in the restrictions.[3]

Judicial decisions indicate the use of "private homes" reflects an intention to restrict property to separately-constructed single-family dwellings. When "private" has been added to a word such as "homes", the majority of courts have held that the restriction prohibits the use of property for a building containing more than a single family. *See Orange Beach Marina, Inc. v. Warner*, 500 So.2d 1068, 1071 (Ala.1986); *Flaks v. Wichman*, 128 Colo. 45, 260 P.2d 737, 739 (1953) (noting that "private", when used with "residence", is peculiar to privacy of one family, and not applicable to structures for multiple families); *Hunt v. Held*, 90 Ohio St. 280, 107 N.E. 765, 765–67 (1914); *Albino v. Pacific First Federal S & L Ass'n.*, 257 Or. 473, 479 P.2d 760, 761 (1971); *Joyce v. Conway*, 7 Wis.2d 247, 96 N.W.2d 530, 532 (1959); *Ward v. Prospect Manor Corp.*, 188 Wis. 534, 206 N.W. 856, 859 (1926), as cited in 46 A.L.R.

364 (1927); W.E. Shipley, Annotation, *Multiple Residence as Violation of Restrictive Covenant*, 14 A.L.R.2d 1376, 1395, 1415 (1950).

In *Orange Beach*, the covenant stated that "nothing but a single [family] private dwelling or residence" could be constructed. The court adopted the view stated in *Hines v. Heisler*, 439 So.2d 4, 6 (Ala.1983):

This court opines that the use of the word "private" entirely negates any implication that this property in question could be used for any type of commercial purpose such as the multifamily type units sought to be constructed by Plaintiffs.

*Joyce* noted at 96 N.W.2d at 532, "where the word 'private' has been added to 'dwelling' . . . the majority of courts have held that such a restriction prohibits use of the property for dwelling purposes of more than a single family."

*Albino*, 479 P.2d at 761, states that prohibiting all buildings except a "private dwelling house" prohibits the construction of "multiple family or apartment housing."

*Hunt*, 107 N.E. at 765–66, involved a covenant restricting property "for residential purposes only." The court determined that the language did not restrict owners to single-family dwellings, stating:

If it had been intended that the building was to be for the use of one family only, words indicating such an intention would have been used, as is frequently done, such as a "single residence," "a private residence," "a single dwelling house. . . ."

The trial court correctly found that the restriction prohibited the construction planned. The next question is whether, as Appellants contend, "the restrictions contained in the plat of the subdivision have been waived or abandoned by . . . continued and long-standing acquiescence in violation of those restrictions." Defendants contend that as no action has been taken following the construction of "a horse barn, a metal pole

3. No finding of fact was made as to the existence of condominiums in the Lake of the Ozarks area in 1954. "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result

reached." Rule 73.01(a)(3). The trial judge does not have to believe testimony even when uncontradicted. *Martin v. White*, 825 S.W.2d 379, 380 (Mo.App.1992).

barn, metal garages and storage buildings" and other small buildings used by the residents but not attached to their residences, the lot owners have waived or abandoned the restriction by this "continued and long standing acquiescence in violation of these restrictions."

Each case considering what acts or inactivity constitute a constructive waiver or abandonment of a restrictive covenant must be determined on its facts. *Forst*, 870 S.W.2d at 446; *Virdon*, 711 S.W.2d at 207. Waiver or abandonment may be based on failure to object to violations of a restriction. *Id.* at 448. A restriction upon land may be waived and abandoned by continuous acquiescence evidenced by persistent violations. *Connelly v. Schafer*, 837 S.W.2d 344, 347 (Mo.App.1992). Such violations must be widespread to constitute waiver or abandonment. *Id. See also Ward*, 206 N.W. at 859–860 (holding that there was no waiver as to violations not affecting a lot owner or where violations are slight).

Assuming that the buildings to which Defendants refer are violations of the restriction, they are all buildings which could be considered as appurtenances to a single-family dwelling. We cannot say as a matter of law that any acquiescence in these violations were such to have prevented all Plaintiffs from enforcing the restriction due to waiver or abandonment. Point II is denied.

Defendants' remaining contention is that the restriction should be invalid, if it prevents the type of buildings Defendants propose to construct, "in that the uncontroverted evidence has clearly establish that the subdivision has undergone such a substantial change in its character that it defeats the essential object and purpose of the restriction."

Defendants assert that at the time the plat was executed condominiums were a rarity around or near the Lake of the Ozarks; the plat contained large lake front lots, some of which have been subdivided; and the "trend in the entire area is toward higher density development of the lake front property." They also refer to the enactment of the Condominium Property Act, RSMo

§§ 448.010, *et seq.*, in 1963, and the Uniform Condominium Act, RSMo 448.1–101, *et seq.*, in 1983.

The so-called trend and the enactment of legislation is not, of course, a change in this subdivision, but perhaps in the area near it and relates to uses which could be made of this land absent an enforceable restriction, prohibiting condominiums. *Gibbs v. Cass*, 431 S.W.2d 662, 669 (Mo.App.1968) states:

Where the defense of changed conditions is asserted the burden of proof rests on the defendant to prove (1) the radical change in condition; (2) that as a result enforcement of the restriction will work undue hardship on him; (3) and will be of no substantial benefit to the plaintiff. Unless defendant sustains this burden of proving changed condition injunctive relief will be granted. [Citation omitted.] On the other hand if the evidence shows that a radical change has taken place in the whole neighborhood such as defeats the purpose of the restriction and renders its enforcement inequitable and oppressive, equity will not enforce it.

The totality of the circumstances must be considered in determining the defense of changed circumstances. *Connelly*, 837 S.W.2d at 348. The change in circumstances must be so radical that it defeats the essential purpose of the restriction and renders it valueless to the parties. *Eilers v. Alewel*, 393 S.W.2d 584, 590 (Mo.1965); *Dierberg v. Wills*, 700 S.W.2d 461, 467 (Mo.App. 1985). A change of conditions in part of a restricted area does not necessarily prevent the enforcement of a restriction. *Id. Dierberg* states:

If the covenant remains of substantial value, the court will enforce the covenant even though changed conditions have caused a hardship to the party seeking relief from the covenants. [Citation omitted.] The court is more likely to deny enforcement on the ground of changed conditions if such changes have occurred within the restricted area itself and have been wrought by the party seeking judicial enforcement. *Id.*

Other changes in the lake area do not establish that the restriction here is not of continued benefit to Plaintiffs. It may well be, and Plaintiffs apparently so feel, that they are benefitted by preventing and not having buildings containing numerous residences. Reducing the size of the lots is not such a radical change as to prevent an injunction. This contention is denied.

The judgment is affirmed.

SHRUM, C.J., and CROW, J., concur.