**Stephen L. KLING, Jr., et al., Plaintiffs–Respondents,**

v.

**TAYLOR–MORLEY, INC., Defendant–Appellant.**

No. 69229.

Missouri Court of Appeals, Eastern District,

Division Two.

July 16, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1996.

Application to Transfer Denied Oct. 22, 1996.

Merle L. Silverstein, Clayton, for appellant.

Jason M. Rugo, St. Louis, for respondents.

CRAHAN, Presiding Judge.

Defendant, Taylor–Morley ("Developer") appeals an adverse judgment enjoining the construction of an office building and declaring its development to be in violation of a restrictive covenant enacted by prior owners of the property. We affirm.

At the core of this dispute is an agreement establishing a restrictive covenant allocating benefits and burdens to the properties along Questover Lane ("Lane"). At the time of the agreement's inception, Lane was entirely a private roadway, lined with large single family dwellings. The covenant was adopted by the residents and owners along Lane ("Owners").

Lane's only access to outside roadways is at its northern end where it meets Olive Boulevard. The agreement was twice amended to encompass the southward extensions of Lane and the development of new residences. Last amended in 1967, the agreement as currently in effect provides, *inter alia:* (1) that an easement be granted in favor of each party for the use of Lane and for public utility purposes; (2) that the signatory parties would be jointly responsible for the maintenance of Lane; (3) that three trustees would be appointed from the resident owners to oversee this maintenance and approve all future construction along Lane;

and (4) that no property abutting or adjoining the above easement for Lane shall be used for any other purpose than that of single family residential use.

In 1975, pursuant to a condemnation proceeding, the state took an easement over the northern end of Lane to relocate its entrance to Olive. When the relocation was completed the state quitclaimed its easement to the City of Creve Coeur. After this relocation all of Lane except for approximately the northernmost 200 feet remained private.

Developer subsequently purchased a tract of land on the northern edge of Lane. This parcel fronted against both the private and now public sections of Lane. In 1994, Developer received permission from the City of Creve Coeur to construct a three story commercial office building with 189 parking spaces on this parcel. The parking lot for this development would have only one exit, which would be connected to the public section of Lane. Owners are concerned that this exit would create a bottleneck and obstruct their only access to Olive and the outside world.

Owners and Developer discussed various proposals that would allay Owner's concerns while allowing construction of the facility. When these discussions proved unsuccessful, and Developer indicated an intention to continue, Owners filed suit. Owners sought declaratory judgment that Developer was subject to the agreement and that this development violated the provision prohibiting all buildings save single family residences. The trial court so declared and issued an injunction enjoining construction of the office building. Developer appeals.

Developer complains that the trial court erred in issuing its declaratory judgment and injunction because: (1) the agreement does not run with the land and therefore only applies to its signatories; (2) the relevant prohibitions of the agreement have been waived by Owners; and (3) the agreement does not apply to the parcel to be developed as it no longer abuts or adjoins the private section of Lane.

In this court-tried equity action, the ruling of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Simcox v. Obertz*, 791 S.W.2d 440, 442 (Mo.App.1990).

Restrictions upon the free use of land are not favorites of the law. *Simcox*, 791 S.W.2d at 442. However, a restrictive covenant is a private contractual obligation generally governed by the same rules of construction applicable to any covenant or contract. *Kauffman v. Roling*, 851 S.W.2d 789, 792 (Mo.App.1993). The primary rule in the interpretation of a contract is to ascertain the intent of the parties and to give effect to those intentions. *Id.*

Where possible, courts give effect to the intent of the parties as expressed in the language of the covenant. *Stolba v. Vesci*, 909 S.W.2d 706, 708 (Mo.App.1995). In doing so, terms should be given their plain, ordinary and usual meaning. *Id.* However, where the meaning is in doubt, it is proper to consider the intentions of the parties. *Id.* In determining these intentions, courts inquire into the purpose sought to be accomplished and the accompanying circumstances at the time of the restrictive covenant. *Id.*

Developer first contends that the plain language of the covenant indicates an intention of its creators that it should be a personal covenant as opposed to a real covenant. Real covenants are those which "touch or concern" or benefit the land and are said to run with the land. *Lake Wauwanoka, Inc. v. Spain*, 622 S.W.2d 309, 312 (Mo.App. 1981). Personal covenants are promises made by grantor and grantee which generally concern the use of the land. *Id.* These covenants do not run with the land but are binding on those who purchase with actual or constructive knowledge of the covenant. *Id.*

In support of its argument that the instant covenant is personal, Developer relies upon the absence of any express language in the agreement providing that the covenant run with the land and more specifically on Paragraph "E" on page 6 of the agreement. This paragraph provides:

That permission shall not be granted to any person, firm or corporation to use said Questover Lane as described in parcels 1 and 2 above, or as same is platted and laid out in Parcel 3 above or to West Questover Lane as hereinabove referred to, unless such person, firm or corporation for himself, themselves or itself subscribes to and agrees to the terms and conditions thereof as to the property served by said Questover Lane and West Questover Lane, and unless the owner or owners of such parcels subject the same to these restrictions.

Developer reads this paragraph as a proscription against alienation of any of the subject property unless the intended purchaser agrees to abide by the terms of the agreement. Developer then reasons that such a paragraph mandating the extension of the restrictive provisions to new buyers would be unnecessary if the covenant was intended to run with the land. Owners interpret paragraph "E" as a restriction on the use of the property along Questover Lane by anyone not currently an owner of such property.

We find Owners' interpretation persuasive. Developer's contention that paragraph "E" is a conditional restraint on alienation is inconsistent with the language of the agreement. Paragraph "E" prohibits residents of Lane from giving permission for "use" of their property rather than simply prohibiting an outright transfer of their property. The last sentence of the paragraph also requires an owner of a parcel who gives permission for its use to "subject same [those using the parcel] to these restrictions." This contemplates that the owner of a parcel and the entity using it would not be one and the same. Such would not be the case if the parcel were being sold. By its terms, paragraph "E" is a restriction on current owners not to allow the use of their property by those who will not follow the restrictions in the agreement. This would prevent the violation of the terms of the agreement by those not subject to it as owners. Lessors or invitees would not have the ability to do what the owner of the parcel could not.

■ Developer correctly notes that ambiguities must be resolved in favor of the free use of the land. *Kauffman*, 851 S.W.2d at

792. Developer concludes that this ambiguity as to the effect of paragraph "E" must therefore be resolved as meaning that this covenant does not run with the land because that would allow the land its most unrestricted use. But ambiguity exists only when wording is reasonably susceptible to different interpretations. *Stolba*, 909 S.W.2d at 708. Because of the inconsistencies cited above, Paragraph "E" is not reasonably susceptible to Developer's strained interpretation. A covenant is not rendered ambiguous by the fact that the parties differ as to the proper construction to be given it. *Kauffman*, 851 S.W.2d at 792.

■ Developer next contends that Owners have waived the restrictive covenant through years of selective enforcement of its provisions. A restrictive covenant may be waived and abandoned by conscious acquiescence in the persistent violation of the provision. *Forst v. Bohlman*, 870 S.W.2d 442, 446 (Mo.App.1994). There are no absolute rules as to what acts or inactivity by landowners and trustees constitutes a constructive waiver or abandonment. *Id.* Waiver of one provision of a restrictive covenant does not serve to waive any other provision. *Connelly v. Schafer*, 837 S.W.2d 344, 346 (Mo.App.1992). As provisions are independently considered, we need only focus on the prohibition against use of property adjoining or abutting Lane for any purpose except single family residential use.

■ Developer alleges Owner's allowance of two developments—"The Cove" and the Lenzen tract, amount to a waiver of this restriction. The Cove is a multi-unit apartment building. Six acres of The Cove's land abuts Lane. Owners agreed to the development of The Cove so long as this six acre tract was allowed to remain greenspace. Owners claim that since none of the six acre tract which abuts Lane was developed, there is no violation of the agreement. Developer adduced evidence that a portion of a Cove parking lot overlapped onto this six acre tract, and Owners adduced evidence that they neither knew of or consented to any encroachment if it existed. Given the deference afforded to the trial court in the resolu-

tion of factual issues, it cannot be said that the trial court erred in finding no waiver arising from the development of The Cove.

Unlike The Cove, the Lenzen tract development clearly does involve development of property covered by the terms of the agreement. Developer contends that this land was used to develop a twelve unit condominium. Owners argue that the development was instead single family attached townhouses which do not violate the terms of the agreement. The trial court found that the construction authorized by the trustees for the Lenzen tract involved single family attached dwellings, which would not violate the terms of the covenant. There was substantial evidence to support this factual determination.

Further, assuming *arguendo* that the above developments were violations of the agreement, they were not so general or widespread as to indicate an intention to abandon the restriction to single family residences. If restrictions apply to an entire area and redound to the benefit of all property owners in the restricted area, then waiver or abandonment only occurs when violations of the restrictions are so general so as to indicate an intention or purpose to abandon the plan or scheme intended to be maintained by the restrictions. *Dierberg v. Wills,* 700 S.W.2d 461, 466 (Mo.App.1985). Accordingly, the trial court did not err in finding that these restrictions were not waived and remained in effect.

Developer's final contention is that the property intended for commercial development is not subject to the terms of the agreement because the property itself no longer abuts or adjoins Lane. Developer has shaved off a thirty foot wide strip of land from this property where it abuts Lane. This strip was conditionally granted to an uninvolved subdivision of single family homes on Lane which is also owned by Developer. Developer concludes that since the modified property no longer abuts or adjoins Lane, it is not subject to the restrictions in the agreement.

The trial court found that the restriction on property adjoining and abutting Lane includes all property which was adjoin-

ing or abutting Lane at the time the agreement was adopted. Thus, the trial court interpreted "adjoining and abutting" as a descriptive phrase, subjecting a fixed area of land to the terms of the agreement. This is a reasonable construction of the language of the covenant and consistent with the overall intent of the agreement. The covenant unambiguously provides that no property adjoining or abutting the road easement shall be used for any purpose other than one-family residential use. Further, the trustees must approve all new construction and the residential construction authorized by the covenant must have at least 1200 square feet of living space. Inasmuch as it would be wholly impractical to construct residential property of this character on a thirty foot wide strip adjacent to the road easement, it would be manifestly inconsistent with the overall intent of the agreement to find that the restrictions can be circumvented by such a ruse. We find no error in the trial court's declaration that the restrictions apply to all property which adjoined or abutted Quest-over Lane at the time the revised agreement was executed.

Judgment affirmed.

CRANDALL and DOWD, JJ., concur.