David HEMSATH, the Estate of Melvin Hemsath and the Lillian Hemsath Trust, Plaintiffs/Respondents,

v.

CITY OF O'FALLON, Missouri, Defendant/Appellant.

No. ED 89776.

Missouri Court of Appeals, Eastern District, Division Four.

May 20, 2008.

Application for Transfer Denied July 14, 2008.

Blackwell Sanders LLP, Eric D. Martin, Joshua C. Devine, St. Louis, .MO, for appellant.

Niedner, Bodeux, Carmichael, Huff, Lenox, and Pashos, LLP, Charles W. Niedner, Co–Counsel, Knight & Tomich, Jane E. Tomich, Co–Counsel, St. Charles, MO, for respondents.

MARY K. HOFF, Presiding Judge.

The City of O'Fallon (City) appeals from the judgment in favor of David Hemsath (Hemsath) arising from an alleged breach of a sewer provision contained in a Petition for Voluntary Annexation (Annexation Petition). On appeal, the City argues the trial court erred in: (1) finding Hemsath had standing to sue the City after he sold the annexed property; (2) holding the City had breached the sewer provision after the annexation petition was approved; (3) finding damages based solely on Hemsath's speculative valuation testimony; (4) awarding judgment to Hemsath when he failed to state a claim under Section 432.070; and (5) granting Hemsath's motion in limine to deny the City's filing of an amended answer. Finding Hemsath had no standing to sue the City based on the breach of contract claim, we reverse the trial court's judgment.

*Factual and Procedural History*

In 1999, the City approached Melvin Hemsath, Hemsath's father, about annexing 80 acres of undeveloped land that he owned located across Highway 40/61 from the Winghaven development in St. Charles County. After six months of negotiations between the City and Melvin Hemsath, Robert Wohler (Wohler), the City's attorney, prepared the Annexation Petition memorializing the terms of the agreement reached between the City and Melvin Hemsath. The Annexation Petition stated:

> In consideration of the annexation, the City agrees to extend a sanitary sewer line along the portion of Highway 40/61 frontage owned by the undersigned, and to provide three (3) residential or commercial sewer tap-ons.

Melvin Hemsath signed the Annexation Petition and, on January 6, 2000, the property was annexed into the City's corporate limits through Ordinance No. 3998.

Melvin Hemsath died on November 28, 2000. At the time of his death, the City had not built the sewer line. Hemsath, Melvin Hemsath's only child and heir, became the sole owner of the property that is the subject of this litigation.

On January 22, 2001, Hemsath entered into a contract to sell the property to National Paper. The sales contract was amended on June 15, 2001. The Annexation Petition was attached as an exhibit to the Sales Contract. The property having sewer service was one contingency of the contract. After considerable negotiation, National Paper and Hemsath agreed on a sale price of $7,200,000, due in part to the lack of sewer service to the property.

On June 26, 2001, before the sale closed, National Paper and the City entered into an agreement wherein National Paper gave the City a full and complete release of any obligation relating to the sewer provision in exchange for a sewer line development credit and grant of sewer easement rights. The agreement provided:

> As part of the Petition for Voluntary Annexation executed by Melvin Hemsath on December 1, 1999, the City agreed to provide the Property with sanitary sewer service by extending a sanitary sewer line along the Property's 3649.02 feet of Highway 40/61 frontage (the "Frontage").

National Paper and the City agreed that the property would not receive a sewer line along the Frontage, but would be serviced by a connection to Duckett Creek Sanitary District line (Duckett Creek), located to the southwest of the property.

On July 11, 2001, Hemsath transferred title to the property to National Paper by Special Warranty Deed (Deed) that conveyed its title to the property including, "all rights and appurtenances to the same belonging," without reservation of any rights. After the transfer of title, the City paid National Paper a sewer line development credit of $49,139.22, and received a full and complete release.

Over one year later, Hemsath filed suit against the City for breach of contract and promissory estoppel. In a pre-trial motion for judgment on the pleadings, at trial, and in motions for directed verdict, the City argued that Hemsath lacked standing to assert damages allegedly arising from the sewer provision for property Hemsath had already sold. Following a bench trial, the trial court found the City breached the sewer provision in the Annexation Petition and entered judgment in favor of Hemsath in the amount of $700,000 in damages and $372,750 in prejudgment interest. This appeal follows.

*Standard of Review*

Appellate review of this court-tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). *Klokkenga v. Carolan,* 200 S.W.3d 144, 152 (Mo.App. W.D.2006). We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We view the evidence and all reasonable inferences therefrom in the light most favorable to the judgment disregarding all contrary evidence and inferences. *Id.* The credibility of the witnesses and the weight to be given to their testimony are matters for the trial court, which is free to believe none, part, or all of the testimony. *Id.* We review questions of law de novo. *Blue Pool Farms, LLC v. Basler,* 239 S.W.3d 687, 690 (Mo.App. E.D.2007).

## Discussion

In its first point, the City argues the trial court erred in finding Hemsath had standing to sue the City after he sold the property to National Paper. Specifically, the City contends the sewer provision was an appurtenant covenant running with the land rather than a personal contract between Melvin Hemsath and the City; therefore, the City maintains, Hemsath's right to enforce the sewer provision was conveyed to National Paper, a third-party buyer, who ultimately released the City of its obligation to install the sewer line. We agree.

■ Whether Hemsath had standing to raise the breach of contract claim before the trial court is a matter of law that we review de novo. *Verni v. Cleveland Chiropractic College,* 212 S.W.3d 150, 153 (Mo. banc 2007). Where a question of standing has been raised, we have a duty to resolve that question before reaching any other substantive issue. *Id.*

Here, the trial court found that a contract was entered into between Hemsath and the City and that the City obtained the benefit of the contract when it annexed Hemsath's property. The trial court found the City acknowledged it was contractually obligated to bring sewer service to the Hemsath property within a reasonable period of time.

The trial court found that a May 3, 2001 letter written to Hemsath by Todd Criswell (Criswell), former civil engineer and project manager for the City, constituted notice by the City of its refusal to perform its obligations under the Annexation Petition. Criswell's letter read:

As you may know, there are currently no sanitary sewers in this area of Highway 40/61 and for this reason no plans have been completed for the extension of Sanitary Sewers across the Hemsath property. Once Duckett Creek Sewer District extends sanitary sewers to this property, the City will per it's [sic] annexation agreement design and construct a sanitary sewer along the portion of Highway 40/61 frontage owned by Mr. Hemsath. Until the time of the Duckett Creek project, our sanitary sewer system would have nothing to connect to.

The trial court also found:

as a matter of law that [Hemsath's] claim for damages for [the City's] breach of contract is not a "covenant that runs with the land" as argued by [the City], and was not assigned away by execution of said deed at the closing when Hemsath sold the property.

The trial court concluded that had the City not "reneged" on its obligation to extend sewer service to the property, Hemsath would not have had to accept a $700,000 price reduction on the sale of the property. We find the trial court's rulings erroneous as a matter of law.

■ A real covenant is said to "run with the land" if it "touches and concerns" or "benefits" the land. *Kling v. Taylor–Morley, Inc.,* 929 S.W.2d 816, 819 (Mo. App. E.D.1996). Personal covenants, in contrast, are promises made by grantor and grantee which generally concern the use of the land. *Id.* These covenants do not run with the land but are binding on those who purchase with actual or constructive knowledge of the covenant. *Id.* In a covenant that runs with the land, the right to sue upon the nonperformance of the duties therein enumerated passes to the current owner of the land. *See Kerrick v. Schoenberg,* 328 S.W.2d 595, 601 (Mo. banc 1959). To determine whether or not a covenant runs with the land, one must ascertain the mutual intent of the parties as expressed by the covenant's plain language. *Klokkenga,* 200 S.W.3d at 159.

■ Here, the Annexation Petition provided in pertinent part:

In consideration of the annexation, the City agrees to extend a sanitary sewer line along the portion of Highway 40/61 frontage owned by the undersigned, and to provide three (3) residential or commercial sewer tap-ons.

Hemsath maintains this provision reflects the parties intended the building of the sewer line to be a contractual obligation between the City and Hemsath that would not be automatically assigned to a subsequent purchaser without Hemsath executing a document expressly assigning it to a purchaser of his land. We are not persuaded by Hemsath's argument.

First, the sewer provision created a benefit to the physical use or enjoyment of the land, thereby satisfying the element that requires the covenant touch and concern the land. *Kling*, 929 S.W.2d at 819; *see also City of Perrysburg v. Koenig*, 1995 WL 803592, at *3 (Ohio App. 6 Dist.)(stating that an agreement to provide water and sewers provides "a benefit to the physical use and enjoyment of the land" and therefore "touches and concerns the land"). Because the covenant to build a sewer line ran with the land, the right to enforce that obligation was conveyed from Hemsath to National Paper. *Kerrick*, 328 S.W.2d at 600.

Second, the sewer provision was an appurtenant benefit to the property, tying the obligation to construct a sewer line to the specific property and, therefore, only the current owner of the property could enforce it. *See Ladue Contracting Co. v. Land Development Co.*, 337 S.W.2d 578, 585 (Mo.App.1960)(noting that sewers are "appurtenances" to land); *see also* Section 250.010.2(1), RSMo 2000 [1] (defining "sewerage system" to mean any systems and treatment plants, "with all appurtenances necessary, useful, and convenient for the collection, treatment, purification and disposal in a sanitary manner of the liquid and solid waste, sewage, and domestic and industrial waste").

■ Third, Hemsath transferred his right to sue for the alleged breach of the sewer provision when he sold the property to National Paper, through the Deed, on July 11, 2001. In Missouri, if a property owner sells his land, he conveys to the buyer all property interests and rights that run with the land, including the right to sue for breach of a broken covenant. *See Goad v. Bennett*, 480 S.W.2d 77, 79 (Mo.App.1972); *see also Allen v. Kennedy*, 91 Mo. 324, 2 S.W. 142, 143–44 (1886).

Here, the Deed recited that Hemsath was conveying the property "together with all rights and appurtenances to the same belonging." Neither the Deed nor the June 15 Amendment to the original sales contract contained any provision reserving rights of enforcement for Hemsath relative to the sewer provision or otherwise waiving or abandoning the same. Under the terms of both the sales contract and the Deed, the right to enforce the sewer provision passed from Hemsath to National Paper, which then had the exclusive right to pursue the breach of contract claim.

Finally, National Paper, as the owner of the property possessing the exclusive right to enforce the sewer provision, released the City from any liability associated with the sewer provision in exchange for a monetary payment and the granting of easement rights.

Citing to *Iowa Loan & Trust Co. v. Fullen*, 114 Mo.App. 633, 91 S.W. 58, 59–60 (1905), Hemsath contends that even if the covenant was a real covenant, and not a personal covenant, he still would have

---

**1.** Unless otherwise indicated, all further statutory references are to RSMo 2000.

standing to sue because a real covenant that runs with the land immediately ceases to be such if there is a breach of the covenant by the party obligated to perform the covenant. Upon such a breach, Hemsath argues, the covenant automatically converts into a chose in action personal to the landowner having suffered the breach.[2]

Here, contrary to Hemsath's argument, the substantial weight of the evidence does not show the City either breached the sewer provision by failing to perform within a "reasonable" time or repudiated the sewer provision by manifesting a positive intention not to perform its obligations under the Annexation Petition.

■■■ First, the City did not fail to perform within a "reasonable" time. When a contract does not specify a time period for performance, performance must be made within a reasonable time. *Ballenger v. Castle Rock Bldg. Corp.,* 904 S.W.2d 62, 65 (Mo.App. W.D.1995). What constitutes a reasonable time depends upon the circumstances of each case. *Id.; see also Three-O-Three Investments, Inc. v. Moffitt,* 622 S.W.2d 736, 741 (Mo.App. W.D.1981)(holding that where buyer was required to perform within "reasonable" time, buyer's delayed performance was "not reasonable" because buyer encountered a "multitude of delays" in development of surrounding area). Here, the Annexation Petition did not specify a time period for performance; therefore, we must determine, based on the circumstances of the case, whether the City failed to perform within a reasonable time. We find the City did not fail to perform within a reasonable time.

The effective date of the obligation under the sewer provision was no earlier than January 6, 2000, the date the City passed Ordinance No. 3998 annexing Hemsath's property. Seventeen months later, on June 15, 2001, Hemsath entered into a sales agreement with National Paper to purchase the property. In Criswell's May 3, 2001 letter, which Hemsath claims evidenced the City's refusal to perform its obligation under the sewer provision, Criswell acknowledged the City would design and construct the sewer line in conjunction with Duckett Creek development. The record also shows that in pre-annexation discussions between Melvin Hemsath and the City, it was anticipated that, as development occurred around the property, Duckett Creek would expand to cover this territory and the City would then install a sewer line on Hemsath's property. The City later provided a construction schedule to Hemsath confirming that Duckett Creek planned to expand between December 2001 and August 2002.[3]

■■■ Second, the City did not repudiate the sewer provision by refusing to perform. To the contrary, throughout trial and most apparent in Criswell's letter, the City consistently maintained it intended to

---

2. A further reading of *Iowa Loan & Trust Co.* indicates that, even an individual right to sue is transferable, as in the instant case, by warranty deed: "notwithstanding a covenant which runs with the land will cease to so run at the time there is a substantial breach, yet the covenantee, in whose hand the breach occurs, and subsequent covenantees, may transfer or assign it down the line by their warranty deeds, so that it may be sued on by any remote grantee at any time short of the period of limitations." *Iowa Loan & Trust Co.,* 91 S.W. at 60.

3. We note that under Section 71.015.1(5)(c), a city involved in an involuntary annexation must "furnish normal municipal services . . . to the unincorporated area within a reasonable time not to exceed three years after the annexation is to become effective." [Emphasis added.] The instant case involved a voluntary annexation and Hemsath complains the City repudiated its obligation to provide sewer service on May 3, 2001, a mere sixteen months after the annexation became effective on January 6, 2000.

perform its obligations under the Annexation Petition when the conditions were appropriate. At trial, Wohler testified the City had communicated to Melvin Hemsath in pre-annexation discussions that Duckett Creek would be the means of getting sewer service to the property and that sewer service would be directly linked to the development of the area. Similarly, in Criswell's letter, rather that refusing to perform under the sewer provision, the City reaffirmed its obligation: "Once Duckett Creek Sewer District extends sanitary sewers to this property, the City **will per it's [sic] annexation agreement design and construct a sanitary sewer** along the portion of Highway 40/61 frontage owned by Mr. Hemsath." [Emphasis added.] Even Hemsath acknowledged at trial that Criswell's letter, rather than being a refusal to perform, signaled the City's intention to provide services when Duckett Creek expanded in the future:

Q: Do you recall having that understanding at the time that you received this letter that the City's position was at some point in the future, once Duckett Creek expands, they would supply frontage sewer extensions?

A: It appears to be in this letter this way.

The substantial weight of the evidence demonstrates that, rather than repudiating the sewer provision, the City manifested a positive intention to perform its obligations under the Annexation Petition.

The trial court erred as a matter of law because the sewer provision touches and concerns the property and therefore runs with the land; and the sewer provision is an appurtenant benefit tied to the ownership of the property, which passed to National Paper upon sale of the land. After Hemsath conveyed the property to National Paper, through the Deed, National Paper alone possessed the right to enforce the sewer provision. The record clearly demonstrates that, upon receiving the property from Hemsath, with "all rights and appurtenances to the same belonging," National Paper released the City from any claims arising under the sewer provision. Moreover, the substantial weight of the evidence shows the City did not breach or repudiate the sewer provision. Point one is granted.

*Conclusion*

Finding Hemsath lacked standing to assert damages regarding a parcel of land he had already sold to a third party, we reverse and remand the trial court's judgment with directions to enter judgment for the City.

SHERRI B. SULLIVAN and GEORGE W. DRAPER III, JJ., Concur.