CAMDEN COUNTY PUBLIC WATER SUPPLY DISTRICT # 4, et al., Respondents,

v.

VILLAGE OF SUNRISE BEACH, City of Lake Ozark, et al., Appellants.

Nos. SD 28984, SD 28969.

Missouri Court of Appeals, Southern District, Division One.

April 1, 2009.

Gregory D. Williams, Sunrise Beach, for Appellants.

Larry R. Marshall, Columbia, for Respondents.

ROBERT S. BARNEY, Judge.

Appellants Village of Sunrise Beach, Missouri ("Sunrise Beach"), and City of Lake Ozark, Missouri ("Lake Ozark") (collectively "Appellants"), appeal from the trial court's "Judgment and Order" entered in favor of Respondents Camden County Water Supply District # 4 ("the Water District"), the Water District's Board of Directors, and various landowners (collectively "Respondents") granting Respondents' request to annex certain property into the boundaries of the Water District's service area.[1] Appellants assert three points relied on.

---

1. Respondents' "Second Amended Petition to Annex Territory ..." named the Board of Directors as Ronald Massie, Gayle Repetto, Harrell Dryden, Roger Sallee and Randy Thompson. The petition named the following individuals as "Voter/Landowner Petition-

ers:" Judith Nelson, Curtis Morgan, Donald Brohm, Robert Whitten, Nancy Cason, M.R. Becker, James D. Caven, and Karl Koster. As best we discern from the record, the Water District was formed under the provisions of Chapter 247. Section 247.020 provides that

Viewing the record in the light most favorable to the judgment, *Hemsath v. City of O'Fallon*, 261 S.W.3d 1, 3 (Mo.App. 2008), the Respondents filed their petition in this matter on January 10, 2007, in which they requested pursuant to section 247.030.3, RSMo Cum.Supp.2002, to annex certain territory into the boundaries of the Water District.[2] The petition asserted "[t]he proposed annexation is necessary to provide the area with various public health and safety benefits such as the installations of fire hydrants."[3] Attached to the petition was a legal description of Respondents' proposed Water District boundary changes.

Thereafter, on February 13, 2007, Respondents filed their "Amended Petition to Annex Territory to [the Water District]." The Amended Petition set out that there had been a problem with the original legal descriptions and boundary designations set out in the petition and corrected those problems. In all other aspects, Respondents stood by the allegations and requests contained in the original petition.

On March 1, 2007, "Exceptions to Annexation Petition" were filed by Sunrise

---

"districts to be formed under sections 247.010 to 247.220 shall be known as public water supply districts of the counties in which districts are located, and shall be political corporations of the state of Missouri." Such a district is "incorporated by decree of the circuit court under the procedure prescribed in [section] 247.040, [RSMo Cum.Supp.2002,] for the purposes set forth in [section] 247.010. [Generally speaking], [i]ts express powers are prescribed by [sections] 247.050 and 247.080." *Jackson Cty. Public Water Supply Dist. No. 1 v. State Hwy. Comm'n*, 365 S.W.2d 553, 557 (Mo.1963).
All statutory references are to RSMo 2000 unless otherwise stated.

2. Section 247.030.3, RSMo Cum.Supp.2002, sets out that:

The boundaries of any [public water supply] district may be extended or enlarged from time to time upon the filing, with the clerk of the circuit court having jurisdiction, of a petition by either:
(1) The board of directors of the district and five or more voters or landowners within the territory proposed to be annexed by the district; or
(2) The board of directors of the district and a majority of the landowners within the territory proposed to be annexed to the district.
If the petition is filed by the board of directors of the district and five or more voters or landowners within the territory proposed to be annexed by the district, the same proceedings shall be followed as are provided in section 247.040 for the filing of a petition for the organization of the district, except that no election shall be held.

Upon entry of a final order declaring the court's decree of annexation to be final and conclusive, the court shall modify or rearrange the boundary lines of the subdistricts as may be necessary or advisable. If the petition is filed by the board of directors of the district and a majority of the landowners within the territory proposed to be annexed, the publication of notice shall not be required, provided notice is posted in three public places within the territory proposed to be annexed at least seven days before the date of the hearing and provided that there is sworn testimony by at least five landowners in the territory proposed to be annexed, or a majority of the landowners if the total landowners in the area are fewer than ten. If the court finds that the annexation of such territory would be in the public interest, the court shall enter its order granting such annexation. Upon the entry of such order, the court shall modify or rearrange the boundary lines of the subdistricts as may be necessary or advisable. The costs incurred in the enlargement or extension of the district shall be taxed to the district, if the district be enlarged or extended, otherwise against the petitioners; provided, however, that no costs shall be taxed to the directors of the district.

3. At trial there was evidence that there had recently been three serious house fires in the proposed annexation area and the availability of fire hydrants would have helped in fighting those fires.

Beach.[4] It argued the annexation of the property at issue would "materially alter and affect the ability of Sunrise Beach to complete its ongoing annexation process ..." in that under Missouri law a municipality must "have the ability to furnish normal municipal services to an annexed area within a reasonable period of time ..." and "the provision of water and/or sewer utility services by a public water district could materially hinder, impair, or prevent Sunrise Beach from providing said municipal services...." Further, Sunrise Beach maintained the annexation would violate "applicable Federal Law [which] prohibits or limits the annexation of territory into a municipality which is within a public water district which has obligations outstanding for which it has received federal financial assistance." Additionally, Sunrise Beach asserted the boundary lines for the proposed subdistricts were gerrymandered "to effectively deprive the residents of the proposed annexation area of representation on the board of directors of the [Water District]" and the board of directors for the Water District

> are related parties to and have an existing or prospective interest in the existing water and sewer utility supplier within the proposed annexation area, Lake Region Water and Sewer Company [ ("Lake Region") ], such that any proposed acquisition of the assets of said

company by the [Water] District would not be an arms-length transaction.

Accordingly, Sunrise Beach opposed the annexation petition.

Lake Ozark then filed its "Motion to Dismiss and Exceptions to Proposed Annexation" on March 6, 2007. In its motion, Lake Ozark asserted Respondents' petition should be dismissed for failing to state a cause of action in that it failed to meet certain procedural requirements set out in section 247.030, RSMo Cum.Supp.2002. Lake Ozark also argued it took exception to the proposed annexation in that such annexation was "not in the best interests of the majority of landowners affected;" it "would adversely affect the interests of [Lake Ozark] to serve its landowners within the proposed annexed district;" and "the reasons for [Respondents'] proposed annexation have already been met and would not be further served by annexation." As such, it opposed the annexation petition.

On April 9, 2007, Respondents' second amended petition was filed. This second amended petition addressed the procedural deficiencies pointed out in Lake Ozark's motion to dismiss, but otherwise raised the same issues set out in the original petition. Respondents then filed a motion to dismiss the exceptions filed by Sunrise Beach; objections to the exceptions filed by Sunrise

---

4. Also, in the course of these proceedings a "Motion to Intervene" was filed by Ned K. Goss D/B/A/ Total Environmental Service's Incorporated ("Total Environmental") which alleged that as "a business that tests, maintains, inspects and sells supplies for private sewage treatment facilities ..." it would be financially damaged and suffer interference with its business relationships if the annexation was approved. The motion to intervene was granted; however, on the day of trial the trial court noted in its docket entry that Total Environmental's counsel "announce[d] that the intervenors have settled their dispute and the matter can be taken up without their participation in the trial." Accordingly, Total Environmental does not appear in this appeal.

Further, "Exceptions to Annexation Petition" were filed by "the Shawnee Bend Landowners," who resided within the area proposed to be annexed by the Water District, and who asserted the annexation of their property into the Water District would "materially alter and affect" them in that they had a right "to protect their interest in the availability and affordability of water and sewer utility services." The exceptions filed by the Shawnee Bend Landowners were withdrawn prior to trial. They also do not appear in this appeal.

Beach; and objections to the exceptions filed by Lake Ozark.

At a pre-trial hearing on April 13, 2007, the trial court took all of the pending motions under advisement. On July 10, 2007, the trial court overruled Respondents' motion to dismiss the exceptions filed by Sunrise Beach.

A trial in this matter was held on August 31, 2007; September 4, 2007; and September 17, 2007. As best we discern the record, at the time of trial no water or sewer services were being provided by either Sunrise Beach or Lake Ozark to the proposed annexation area nor had they installed any fire hydrants in the proposed annexation area.

In its Judgment entered on September 27, 2007, the trial court found that "[n]otice of this hearing has been given as required by state statute and that all jurisdictional requirements have been met;" that Respondents' petition for annexation was sustained as being "in the public interest;" that "the subdistricts identified in . . ." the petition "are in the public interest" and are adopted; that "since the publication of notice of the within hearing no member of the public has come forth to oppose the petition for annexation filed

herein except for one witness presented as a witness for . . . Sunrise Beach." Accordingly, the trial court granted Respondents' annexation request and taxed them with costs associated with the matter. This appeal followed.[5]

Review of this court-tried case is governed by Rule 84.13(d). We must affirm the judgment of the circuit court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "We view the evidence and all reasonable inferences therefrom in the light most favorable to the judgment disregarding all contrary evidence and inferences." *Hemsath*, 261 S.W.3d at 3. "The credibility of the witnesses and the weight to be given to their testimony are matters for the trial court, which is free to believe none, part, or all of the testimony."[6] *Id.*

In their first point of trial court error, Appellants maintain the trial court erred in "entering judgment to grant extension of the [Water] District's boundaries because it was not in the public interest or reasonable and necessary" due to "substantial conflicts of interest contrary to the public interest."[7]

---

5. We note that Sunrise Beach and Lake Ozark filed separate appeals in this matter; however, these matters were consolidated for purposes of appeal and they filed a single appellate brief between them.

6. We also observe that in their brief Appellants maintain that the standard of review in annexation cases is further guided by certain factors set out in *City of Centralia v. Norden*, 879 S.W.2d 724, 727 (Mo.App.1994); however, *City of Centralia* and the cases cited therein are municipal annexation cases dealing with land annexation by municipalities to increase their population and land boundaries. *See* § 71.015. The present case is a Water District annexation case governed by section 247.030, RSMo Cum.Supp. (2002), which specifically provides the trial court's role is sim-

ply to determine whether "the annexation of such territory would be in the public interest. . . ." We do not find the cases cited by Appellants on this issue to be binding on the issues raised herein.

7. We note Appellants' points relied on violate Rule 84.04(d) which mandates that a point relied on must "identify the trial court ruling or action that the appellant challenges;" "state concisely the legal reasons for the appellant's claim of reversible error;" and "explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." "This Court has the discretion to dismiss an appeal for failure to comply with Rule 84.04 or to review the appeal on the merits where we are nonethe-

At trial, Appellants presented evidence relating to various relationships between individual board members and interested parties of the Water District and directors and employees of Lake Region, the privately owned, water company that actually supplies water to the proposed annexation area.[8] For example, there was evidence introduced at trial that Robert Schwermann ("Mr. Schwermann"), the co-owner and president of Lake Region and several other water companies, was also an advisor to the Water District in financial and other matters. Further, there was evidence that Mr. Schwermann's son was secretary of the Water District and was also involved in the management of Lake Region and other companies owned by his father. Also, there was testimony that Roger Sallee, the president of the Water District's Board of Directors, was a former business partner of Mr. Schwermann, was the holder of a promissory note secured by Mr. Schwermann, and was a tenant of Mr. Schwermann. Likewise, there was evidence that John Summers ("Mr. Summers"), the Water District's General Manager, was also a manager at Lake Region and was employed by an entity with ties to Mr. Schwermann.

In addition to the interpersonal relationships set out above, there was also evidence relating to "water availability fees," which are apparently fees paid by landowners on occupied property as well as empty lots to Lake Region "for water availability charges." These fees were paid to an entity associated with Lake Region as part of the landowners' typical monthly fees. There was no evidence as to what these fees were used for once they were collected.

Appellants contend the foregoing relationships illustrated "too many ... potential conflicts to accurately track" such that the trial court "was unreasonable in expanding the territory of the [Water District] in which more property owners and their money would become entangled in the web. Further, Appellants assert there are direct personal financial motivations ever present which would constitute ongoing conflicts of interest." Appellants rely on *State ex inf. Gavin v. Gill*, 688 S.W.2d 370 (Mo. banc 1985), as support for this argument. In *Gill*, the appellant was "a firefighter employed by the City of Poplar Bluff" when "he was elected a district director of Butler County Fire Protection District." *Id.* at 371. The prosecuting attorney of Butler County ousted the appellant from his fire district position in a *quo warranto* action based on a statute in effect at the time which prohibited a person who was employed by a city from also holding the office of fire protection district director. *Id.* at 371–72. This action was then upheld on appeal under the notion that "[p]ublic bodies have an important interest in securing the absolute loyalty of their employees. Different governmental units frequently interrelate. The Legislature well might conclude that an employee of one governmental unit should not be eligible to serve as a member of the governing board of another." *Id.* at 372 (internal citations omitted). As such it found under the statute that "there is no less

---

less able to ascertain the issues." *Sharpe v. Sharpe*, 243 S.W.3d 414, 417–18 (Mo.App. 2007). In that we can understand Appellants' points relied on despite their deficiency, we shall address them in this opinion.

All rule references are to Missouri Court Rules (2008).

8. Appellants set out in their brief that Lake Region "already provides water and sewer services to a part of the ..." proposed annexation area and that "its tariffs are subject to the authority of the Missouri Public Service Commission." Respondents do not dispute these assertions.

restrictive alternative. In the appellant's situation the possibility of conflict is clear. He might be reluctant to approve as director a contract or agreement which would affect his duties as firefighter." *Id.* at 372.

Appellants also rely on *Jackson County.*, 365 S.W.2d at 553. In *Jackson County,* a water district filed suit against the Highway Commission because the Highway Commission directed the water district to relocate a number of water and sewer lines and to bear the majority of the cost and expense of the relocation. *Id.* at 554–55. The water district's petition was dismissed by the trial court and the water district appealed with the "position that it was entitled to a fair hearing before the Highway Commission and a determination of the question whether the relocation costs should be imposed upon the [w]ater [d]istrict...." *Id.* at 555. The appellate court held that although water districts are "political subdivision[s]" "[t]he use of a state highway by a utility for proprietary purposes, whether it be publicly or privately owned, must give way to a proper governmental use of the right of way by the Highway Commission." *Id.* at 557. Accordingly, the appellate court upheld the trial court's ruling. *Id.* at 559.

This Court fails to see how *Gill* and *Jackson County* are instructive in the present matter. *Gill* involved a conflict of interest which fell under a statute specifically barring the relationship in that case, and while *Jackson County* found that "public" water districts are "political subdivisions," it is this Court's view that these holdings have little persuasive weight bearing on the issues raised in this appeal. Appellants have failed to show at trial, and now fail to provide this Court with, any probative evidence or pertinent citation of authority as to how the trial court's grant of annexation was contrary to the public interest. The fact that some of the governing members of the Water District have relationships with owners and employees of Lake Region, a private water company, does not *per se* make the trial court's grant of the annexation petition against the public interest. Appellants have not proven their first point of trial court error. Point One is denied.

■ In their second point relied on, Appellants assert the trial court erred in "entering its judgment approving the boundaries of the subdistricts as requested because they reflected gerrymandering in that the boundaries were drawn around the persons appointed to serve on the board."

Section 247.060.1, RSMo Cum.Supp. 2005, sets out that public water districts are managed by an elected board of directors, who "shall be composed of five members, each of whom shall be a voter of the district and shall have resided in said district one whole year immediately prior to his election." This section also allows for the appointment of board members in non-election years:

> [t]he remaining members of the board shall appoint a qualified person to fill any vacancy on the board. If no qualified person who lives in the subdistrict for which there is a vacancy is willing to serve on the board, the board may appoint an otherwise qualified person, who lives in the district but not in the subdistrict in which the vacancy exists to fill such vacancy.

§ 247.060.1, RSMo Cum.Supp.2005. Further, in determining the boundary lines of a public water district following annexation of additional territory, water districts and trial courts are required to "redivide each district into five subdistricts, fixing their boundary lines so that each of the five subdistricts have approximately the same

area." § 247.030.2, RSMo Cum.Supp. (2002).

In the present matter, David Krehbiel ("Mr. Krehbiel"), an engineer, testified that he drafted the proposed boundary changes for the subdistricts within the Water District. .He stated the new boundary lines

> [e]ncase[ ] approximate[ly] some of the boundaries of the existing district, but by statute we had to divide this into five approximately equal areas.... And then we rearranged the districts in such a manner that the present board members would continue on as the board members until such a time as an election took place. And it's been our experience in the other districts we've worked with that this allows for a smooth transition until such time as the next election.

Mr. Krehbiel testified his only consideration in drawing the boundary lines was the fact that section 247.030, RSMo Cum. Supp. (2002), requires the subdistricts be of "approximate equal areas. There's nothing in the statutes with regard to ... where to draw the lines or the shape other than approximate equal areas." He stated that in setting the boundaries he was aware of the approximate location of the homes of each of the board of directors and he arranged the boundaries so "[t]here is a separate director from the current Board of Directors in each of the subdistricts."

Mr. Summers also testified about the subdistrict boundaries being specifically drawn around the location of the serving board members. He related that it was his "understanding that when the [Water District] was formed the group found five people who were willing to serve as directors and the subdistrict boundaries were essentially drawn around those five directors." He stated that the reason there is a "narrow area" in a few of the

subdistricts was because "[t]here were three people very close to each other who were willing to serve" and the subdistricts had to be drawn to accommodate the fact that only one board member could live in each subdistrict.

■ Nevertheless, based on the foregoing testimony, Appellants assert the subdistrict boundaries were the result of "illegal gerrymandering to draw subdistrict lines to benefit the continuation of individuals directors...." The term "gerrymander" has been "defined as 'a name given to the process of dividing a state or other territory into the authorized civil or political divisions, but with such a geographical arrangement as to accomplish an ulterior or unlawful purpose.' " *City of Centralia,* 879 S.W.2d at 730 n. 2 (quoting BLACK'S LAW DICTIONARY 618 (5th ed.1979)).

Even assuming *arguendo* that the concept of gerrymandering can be applied to subdistricts within a Chapter 247 public water district, which we do not hold, the instant subdistricts would had to have been drawn " 'to accomplish an ulterior or unlawful purpose.' " *Id.* Here, evidence of the latter is missing. Mr. Krehbiel and Mr. Summers testified that under the statutes governing annexations and subdistrict boundaries the boundary lines for the five subdistricts contain approximately the same area with each subdistrict containing the residence of one of the elected board of directors. It is clear that under section 247.060.1, RSMo Cum.Supp.2005, each board member serves for a three-year-term and then there is to be an election of a new board member from the voters within the subdistrict. There is nothing in the record which leads this Court to believe the boundary lines were drawn in order to unlawfully and clandestinely benefit the board members who were serving at the time of the annexation. The trial court was free to believe the testimony of Mr.

Krehbiel and Mr. Summers over that offered by Appellants. *Hemsath*, 261 S.W.3d at 3. There is no error in the trial court's approval of the subdistrict boundaries. Point Two is denied.

■ In their third point relied on, Appellants maintain the trial court "was without subject matter jurisdiction and erred in entering judgment to grant extension of the [Water District's] boundaries over the exceptions and opposition of [Sunrise Beach]...." Specifically, they maintain Sunrise Beach "had priority for annexation of the area pursuant to the 'prior jurisdiction doctrine' in that [Sunrise Beach] had taken the first valid step to annexation by enacting an ordinance for annexation."

■ The doctrine of "prior jurisdiction" in annexation proceedings has long been recognized in Missouri. *City of St. Joseph v. Village of Country Club*, 163 S.W.3d 905, 907 (Mo. banc 2005). Under the doctrine, "as between two municipalities competing for the same territory, the one undertaking the first 'valid step' toward annexation has priority." [9] *Id.* (quoting *State ex inf. Taylor ex rel., Kansas City v. North Kansas City*, 360 Mo. 374, 228 S.W.2d 762, 779 (1950)).

■ In *City of St. Joseph*, 163 S.W.3d at 907, our Supreme Court quoted *Mayor, Councilmen and Citizens of City of Liberty v. Dealers Transport Co.*, 343 S.W.2d 40, 42 (Mo. banc 1961), for the proposition that " '[t]he prior jurisdiction doctrine resulted from the sound recognition that there cannot be two municipal corporations with co-extensive powers of government extending over the same area.' " The pri-

or jurisdiction doctrine is used to determine annexation priority not only among competing municipalities, but also among competing school districts where each claims jurisdiction over the same territory. *Id.* That having been said, we fail to see how the doctrine of prior jurisdiction pertains in this instance in view of the fact that the Water District is neither a municipality nor a school district. The Water District's powers are not co-extensive with those of a municipality. All of its powers and limitations relate solely to providing water related services within the confines of its territory as delineated in Chapter 247. *Public Water Supply Dist. No. 16 v. City of Buckner*, 951 S.W.2d 743, 745 (Mo. App.1997).

■ Further, public water supply districts are not shielded from incursion by a municipality. The "legislature did not intend that both [a municipality] and a [public] water district distribute water in the same area at the same time" and it is "obvious that the legislature intended that initially and ultimately the one of the two to be excluded from supplying water within the corporate limits of a [municipality] ... is the [public] district." *Mathison v. Pub. Water Supply Dist. No. 2 of Jackson County*, 401 S.W.2d 424, 431 (Mo.1966). "Otherwise, the legislature would not have ... provided a method ( [section] 247.170, [Cum.Supp.2003,] ) whereby [a municipality] could, as it grew, acquire the assets of a [public water] district lying within an area annexed by the [municipality], without the consent or agreement of the [public water] district." [10] *Id.*

9. In *City of St. Joseph,* the Supreme Court of Missouri held that pursuant to section 71.015 "the first 'valid step' toward involuntary annexation for the purpose of the prior jurisdiction rule is the municipality's proposal of an ordinance as required by section 71.015.1(2)." *Id.* at 909.

10. As stated in *Chance v. Pub. Water Supply District No. 16,* 41 S.W.3d 523, 525 (Mo.App. 2001):

[T]he General Assembly created two means for a municipality to detach property from a [public] water district. Section 247.160 establishes that, after a municipality annex-

■ Even if the doctrine of prior jurisdiction were applicable to the present matter, the Supreme Court of Missouri's opinion in *City of Liberty*, 343 S.W.2d at 43, teaches that "annexation proceedings once commenced must be conducted and completed within a time that is reasonable in view of all of the circumstances."

At trial, Sunrise Beach presented evidence that in 1998 it adopted "a resolution [ ]affirming its intent to annex an area including the area that's at issue" and this "resolution of intent" was reaffirmed by Sunrise Beach on January 9, 2006. Since that time Sunrise Beach has passed three separate ordinances and "accepted [three] voluntary annexation petitions" relating to areas covered by the 1998 and 2006 "resolution of intent," but there had been no further attempt to annex the area at issue. As best we discern the record, Sunrise Beach has taken but few steps toward annexing the territory at issue and was not supplying water related services to the territory now annexed into the Water District. Only the Water District, within the confines of its authority, has completed the proper steps for annexation of territory in this matter. *See* § 247.030, RSMo Cum. Supp.2002. Point Three is denied.

The judgment of the trial court is affirmed.

BATES, J. and SCOTT, P.J., concur.

---

es territory within a water district, the district can contract with the municipality to continue serving the annexed area or to sell or lease any or all of its operations within the district. If the municipality and district cannot agree, [section] 247.170 [RSMo Cum.Supp.2003] allows a municipality, at least 90 days after it annexes an area, to petition for the question of detachment to be submitted to voters in a special election within the entire district.